UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

SARAH C.,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Case No.   1:25-cv-00004

Hon.   Maarten Vermaat
U.S. Magistrate Judge

## OPINION

This opinion addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Burgtorf's decision denying Plaintiff's request for Supplemental Security Income (SSI).   This appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including obesity, respiratory conditions, diabetes, sleep apnea, hyperlipidemia, hypertension, and hyponatremia with Coronary Artery Disease and atherosclerosis with history of myocardial infarctions with stent surgeries.  Plaintiff asserts that the ALJ failed to properly consider listing 11.14 (peripheral neuropathy) and failed to comply with SSR 96-8p by not considering Plaintiff's inability to work due to sleep apnea, hiatal hernia, depression and anxiety, and acute vaginitis.  The Commissioner asserts that the ALJ properly considered listing 11.14 and properly concluded that Plaintiff does not meet the listing.  Further, the Commissioner argues that the RFC findings were

1

correct and that Plaintiff has failed to show further limitations were necessary.

For the reasons stated below, the undersigned affirms the ALJ's decision.

## I.  Procedural History

### A.  Key Dates

The ALJ's decision notes that Plaintiff applied for SSI on February 25, 2022, alleging an onset of disability on that date. ECF No. 6-2, PageID.35. Plaintiff's claim was initially denied by the Social Security Administration (SSA) on October 5, 2022. *Id*. The claim was denied on reconsideration on February 17, 2023. *Id*. Plaintiff then requested a hearing before an ALJ. ALJ Burgtorf conducted a hearing on Plaintiff's claim on August 31, 2023, and issued his decision on October 31, 2023. *Id*. Plaintiff timely filed this lawsuit on January 2, 2025. ECF No. 1.

### B.  Summary of ALJ's Decision

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled. ECF No. 6-2, PageID.36-37.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) from February 25, 2022. *Id*.

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: obesity; Tobacco Use Disorder with asthma, and Chronic Obstructive Pulmonary Disease (COPD); hyperlipidemia, hypertension, and hyponatremia with Coronary Artery Disease and atherosclerosis with history of myocardial infarctions with two stent surgeries in January 2022; Gastroesophageal Reflux Disease with multiple gastric ulcers; and insulin-dependent diabetes mellitus type II with

peripheral neuropathy of the lower extremities. *Id.*, PageID.37-38. The ALJ discussed a number of non-severe impairments, including vision loss, hypertension, diabetes, sleep apnea, acute vaginitis, hiatal hernia, ovarian cyst, dental abscess, and depression and anxiety. *Id.*, PageID.38.

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, PageID.39-40. The ALJ specifically commented on the impairments listed in 3.02 (Chronic Respiratory Disease), 3.03 (Asthma), 4.04 (Ischemic Heart Disease), and 11.14 (Peripheral Neuropathy). *Id.* As to peripheral neuropathy, the ALJ determined that Plaintiff failed to meet the listing by establishing disorganization of the motor function in at least two extremities with extreme limitation in the ability to stand from a seated position; balance while standing or walking; and/or use the upper extremities to perform fine and gross motor movements. *Id.* Further, the ALJ concluded that Plaintiff failed to meet the listing due to not having marked mental limitations. *Id.* Finally, the ALJ concluded that Plaintiff's severe tobacco abuse did limit her mental function. *Id.*

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC:

> To perform light work allowing for every 30 minutes sitting or standing, claimant needs to need to change position, taking her off-task no more than 10% of the day while changing positions. She can stand/walk for four hours out of an eight hour workday. She can occasionally climb ramps and stairs. Plaintiff can occasionally balance, stoop, kneel, and crouch. She can never crawl. Plaintiff must not be required to reach

>  overhead. She cannot climb ladders, ropes, or scaffolds. She must never work around unprotected heights or dangerous moving machinery. She can never work in extreme temperatures, humidity, nor have concentrated exposure to environmental irritants (i.e. fumes, dusts, gases, odors, poorly ventilated areas, etc.).

*Id.*, PageID.41.

The ALJ devoted three pages to discussing Plaintiff's RFC. This discussion included the following:

- an explanation why the findings from the March 2020 ALJ opinion were adopted because the medically severe impairments continue to be severe, but indicating that new evidence of additional impairments involving cardiovascular, digestive and neurological symptoms required further analysis, *id.*, PageID.41,

- a summary of the medical records relating to weight, respiratory system, cardiovascular system, digestive system, and endocrine system, *id.* PageID.42-43, and

- a summary of opinions by Dr. Tom Dees, M.D. and Dr. Natalie Gray M.D., id. PageID.43-44.

At Step Four, the ALJ concluded that, through the DLI, the Plaintiff was unable to perform Past Relevant Work (PRW). *Id.*, PageID.44.

At Step Five, the ALJ considered the Plaintiff's age, education, work experience, and RFC and concluded that Plaintiff could perform unskilled light occupations such as a router, office helper, or collator operator. *Id.*, PageID.45-46.

## II.  Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by

substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III. Analysis

First, Plaintiff argues that the ALJ failed to consider all the necessary evidence when he evaluated Plaintiff's peripheral neuropathy under the criteria in listing 11.14. A claimant is per se disabled if his or her impairments meet or medically equal one of the specific requirements of a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). In short, at Step Three, the ALJ must actually evaluate the evidence, compare it to the Listing, and give an explanation for their conclusion. *Id.*

The Listing states:

**11.14 <u>Peripheral neuropathy</u>**, characterized by A or B:

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

OR

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:

6

1. Understanding, remembering, or applying information (see 11.00G3b(i)); or

2. Interacting with others (see 11.00G3b(ii)); or

3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

4. Adapting or managing oneself (see 11.00G3b(iv)).

The ALJ rejected Plaintiff's assertion that she met listing 11.14 explaining:

> Claimant argued her *peripheral neuropathy* met the listing (B15E). Claimant's peripheral neuropathy *does not* meet or equal listing 11.14 (Peripheral neuropathy). Specifically, to meet or equal the listing there must be objective and/or convincing subjective evidence of the signs, symptoms and functional limitations described in either 11.14A or B. The claimant's signs, symptoms and functional limitations do not satisfy either 11.14A or B. Specifically, 11.14A requires disorganization of motor function in at least two extremities (see 11.00D1), *with* "extreme" limitation (see 11.00D2) in the ability to stand up from a seated position; balance while standing or walking; and/or to use the upper extremities to perform fine and gross motor movements. Claimant has reported neuropathy in both of her legs that limits her ability to stand and walk (B3E and B7E). However, despite her subjective complaints, the objective evidence shows claimant is able to sit, stand, and/or walk without assistive devices (see B12F:6,72, and B18F:6). For these reasons, 11.14A is not satisfied.
>
> Next, in order to satisfy 11.14B, there must be evidence of "marked" limitation of physical functioning (as opposed to the "extreme" level of limitations required in 11.14A) and at least one "marked" restriction of the mental limitations defined in 11.14B1-4. "Marked" limitation is defined as signs and symptoms of a neurological disorder that seriously limits the individual's ability to independently initiate, sustain, and complete work-related physical activities. Claimant's physical function is not "markedly" limited because, as mentioned above, claimant is able to move about and walk without assistive devices (see B12F:6,72, and B18F:6). Because the physical portion of the listing 11.00B is not satisfied, the mental portion, i.e. 11.00B1-4 is not reached. However, as will be explained below, claimant has no mental functional limitations.

ECF No. 6-2, PageID.40.

Plaintiff focuses on § 11.14A and argues that she satisfies the Listing because she has peripheral neuropathy of her feet and legs due to diabetes. ECF No. 9, PageID.1381. Plaintiff stated that she experiences leg pain at night, difficulty going up and down stairs, and she experiences pain after sitting 30 minutes requiring her to walk until she must sit down again after about 15 minutes. ECF No. 6-2,

PageID.58, 61-62, 68, 71. Plaintiff argues that the ALJ made an improper determination that she could not meet the listing by concluding that she was able to walk without assistive devices. Plaintiff argues that whether she uses assistive devices is not relevant to whether she could meet the listing. *Id.*, PageID.1382.

Rather, Plaintiff points to examinations by Dr. Cynthia Abacan, M.D., which showed bilateral pre ulcerative callus on her heels and an abnormal monofilament wire test showing no feeling. She was diagnosed with disorder of the nervous system due to type 2 diabetes mellitus. ECF No. 6-10, PageID.610-611; ECF No. 6-15, 1350-1351.

The ALJ acknowledged that Plaintiff has peripheral neuropathy but found that she did not meet the listing because she did not have an <u>extreme</u> limitation. An extreme limitation involving the lower extremities is defined as:

> 2.  <u>Extreme Limitation</u> means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities. The assessment of motor function depends on the degree of interference with standing up; balancing while standing or walking; or using the upper extremities (including fingers, hands, arms, and shoulders).
>
> a.   Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.
>
> b.   Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.

§ 11.00D(2).

The ALJ properly assessed § 11.14A and explained his reasoning. Further, medical evidence in the record supports the ALJ's reasoning that Plaintiff did not have an extreme limitation such as the inability to stand up from a seated position or to maintain balance in a standing position. Medical examiners reported that Plaintiff had normal strength and movement in all extremities, and normal gait. ECF No. 6-10, PageID.617; ECF No. 6-14, PageID.1115. 1121; ECF No. 6-15, PageID.1337.

Second, Plaintiff argues that the ALJ failed to comply with SSR 96-8p when accessing Plaintiff's RFC by not considering the effects of sleep apnea, hiatal hernia, depression, anxiety, and acute vaginitis on her ability to work. Plaintiff argues that the ALJ failed to undertake a function-by-function assessment of all the relevant evidence necessary to determine Plaintiff's ability to perform work activities and because the ALJ selectively considered the portions of the medical evidence that support Plaintiff's ability to perform light work, the RFC is not accurate and failed to fully reflect her pain symptoms. RFC is an administrative finding of fact reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 598 (6th Cir. 2009). While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec*, 490 F. App'x 748, 754 (6th Cir. 2012). If the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different

9

conclusion." *Id.* Ultimately, the ALJ may consider *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations. SSR 96-8p. The "ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and nonmedical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Here, the ALJ assessed each of Plaintiff's individual symptoms and medical conditions. The ALJ assessed Plaintiff's respiratory and cardiovascular conditions and imposed restrictions in her RFC based upon those conditions. ECF 6-2, PageID.42-43. Finally, the ALJ determined that Plaintiff's sleep apnea, acute vaginitis, hiatal hernia surgery, and depression and anxiety although not severe were covered by the RFC determination. *Id.*, PageID.38-39. The ALJ explained:

> Claimant's alleged *sleep apnea* is not medically determinable because she has not yet had the tests (B15E). There is no evidence claimant has been diagnosed with, or treated for, this alleged impairment (see B20F:12) (see 20 CFR 416.921 for the definition of "medically determinable").
>
> Claimant's *acute vaginitis* (B15E) is not severe because it resolved within 12 months with care. Specifically, in terms of care, claimant was prescribed Diflucan (B7F:14 and B15E). There is no evidence the infection persisted despite care or resulted in more than minimal work limitations (B7F:14,47, and B12F:40).
>
> Claimant's *hiatal hernia* surgery (November 2019) and subsequent small hiatal hernia (October 2020, B3F:1) and *ovarian cyst* were not severe because studies showed no evidence of obstruction. There was no evidence these conditions persisted despite care or had resulted in more than minimal work limitations (B8F:1, B12F:77, and B20F:5).
>
> * * * *
>
> Claimant alleged she was disabled by *depression* and *anxiety* (testimony). She indicated having trouble concentrating, remembering, and completing tasks (B7E). Claimant's alleged depression

10

> and anxiety are not determinable. Specifically, there is no evidence claimant has been diagnosed with, or treated for anxiety in the record. Upon examination, claimant's care providers observed claimant's mental status was normal (B10F:73, B12F:117, and B20F:5) (see 20 CFR 416.921 for the definition of "medically determinable").
>
> Please note all of claimant's medically determinable impairments, including those that are not severe, have been considered in assessing claimant's residual functional capacity later in this decision in Finding #4.

*Id.*

Contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's pain symptoms; instead he included sitting, standing, and extremity restrictions in her RFC which allowed her to change positions throughout the day, and limited her ability to reach overhead. In making this finding, the ALJ relied upon the consulting opinions of Dr. Dees and Dr. Gray and determined that even further restrictions were necessary based upon Plaintiff's symptoms of pain:

> Specifically, in terms of Dr. Dees' and Dr. Gray's opinions, as explained earlier in this decision, the evidence supports finding claimant's obesity and asthma, in combination with her other impairments are also severe because they are comorbid with claimant's heart problems and diabetes. The evidence supports finding can perform light lifting with postural limitations, environmental restrictions, and hazard precautions as proposed by Dr. Dees' and Dr. Gray. However, the later evidence in the record shows claimant has reported pain in her upper extremities after her heart surgery and supports finding claimant should additionally not be required to reach overhead. In addition, the evidence of claimant's lower extremity neuropathy with encouragement to increase walking supports finding claimant can stand/walk four hours, as opposed to the two hours of an eight hour workday suggested by Dr. Dees and Dr. Gray, if claimant is given the opportunity to alternate positions for pain relief without taking her off task more than 10% of the day. In sum, my finding is supported by the preponderance of the evidence.

*Id.*, PageID.44.

Plaintiff has failed to show that the ALJ erred by not including more restrictions in the RFC. Finally, Plaintiff argued in her reply that she would miss work twice a month for medical appointments and would miss at least 24 days per year for medical appointments to address her severe impairments. ECF No. 13, PageID.1410. She asserts, based upon the VE's testimony, this would prohibit her

from work and the ALJ failed by not making findings regarding her absenteeism from work. Plaintiff's last-minute argument is speculative, conclusory, and unsupported.

In sum, the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument is essentially that the ALJ should have weighed and evaluated the evidence differently. But that is not ground for relief. *Brown v. Comm'r of Soc. Sec.*, No. 1:23-CV-122, 2024 WL 1259726, at *5 (W.D. Mich. Feb. 7, 2024), *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1251232 (W.D. Mich. Mar. 25, 2024), and *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1258380 (W.D. Mich. Mar. 25, 2024).

### IV. Conclusion

Accordingly, the Court affirms the ALJ decision because the ALJ properly applied the regulations and because substantial evidence supports his decision.

Dated:   January 30, 2026                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U.S. MAGISTRATE JUDGE